UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LARRY BORUM,

    Plaintiff,

                                                                                Civil No. 08-13482
                                                                                Hon. John Feikens

    v.

GRAND TRUNK WESTERN
RAILROAD, INC.,

    Defendant.
_____

**OPINION AND ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

Plaintiff brings this action against Defendant under the Federal Employers' Liability Act ("FELA"), 45 U.S.C. §51 *et seq.*, seeking damages for claimed injuries to his neck and back allegedly sustained during the course of his employment by Defendant while stepping from the sidewalk into the parking lot at Defendant's Hamtramck Yard. Plaintiff contends that he slipped and fell on a patch of ice on the curb between the sidewalk and parking lot. On June 30, 2009, Defendant filed a Motion for Summary Judgment. Plaintiff filed a Response on August 6, 2009, and Defendant filed a Reply on August 19, 2009. For the reasons set forth below, I GRANT Defendant's Motion for Summary Judgment.

**STATEMENT OF FACTS**

**Plaintiff's Testimony**

Larry Borum ("Borum") has worked for the railroad since 1989, and as a locomotive engineer since 1991. During the 17 years between 1989 and the date of his alleged incident, Borum parked his personal vehicle at Defendant's Hamtramck Yard hundreds of times.

(Borum's Dep., p. 53.)

On March 1, 2006 – the day before the incident – Borum reported for work and parked his truck in the Hamtramck Yard parking lot. (Id., p. 49.) He took a train from Detroit to Battle Creek, and then operated a train from Battle Creek to Flint during the evening of March 1, 2006 and into the early morning of March 2, 2006. (Id., pp. 49-51.) Upon arrival in Flint, Defendant cabbed Borum back to the Hamtramck Yard. (Id., p. 50.)

Borum knew it was raining, sleeting and "icy raining" when he was in Flint prior to the incident. (Id.) He observed ice on the sidewalks and parking lots at the Flint Yard. (Id., p. 65.) He admitted he knew, from living most of his life in Michigan, that ice and snow can be slippery. (Id.) His "assessment of the situation in Detroit was that I should operate with care." (Id., pp. 64-66.) When asked about the conditions at the Hamtramck Yard, Borum testified:

> Q: Your assessment of the situation when you got to Detroit specifically was what, that it was rainy, icy coming down?
>
> A: Yes.
>
> Q: Yes?
>
> A: Yes.
>
> Q: So you knew that when you got out of the van?
>
> A: Yes.
>
> Q: You knew you needed to exercise caution when walking?
>
> A: Yes.

(Id., pp. 66-67.)

Upon Borum's arrival, he "[g]ot out of the van, unloaded my bags, was walking over to the truck and hit the ice and both feet went out from under me and [I] landed on my back." (Borum Statement, p. 5.) He was "…on the sidewalk stepping down into the parking lot when

[he] slipped." (Id.) Borum admitted the sidewalk has a curb, and the curb has a yellow stripe. (Id., p. 6.) Borum admitted the footing conditions were "slippery." and the weather was "[i]ce, sleet, a little snow, rain." (Id., pp. 6-7.) Borum claimed that, while "(t)here was evidence of salt in other areas, … that area didn't have any salt." (Id.) As to the lighting conditions, Borum testified that he didn't "…remember exactly, but I mean it wasn't dark like midnight dark." (Id., pp. 58-59.) He admitted the building he had parked right in front of had exterior lights pointed toward the parking lot. (Id., pp. 59, 63.) He could not recall if they were on or not, but admitted he could not dispute if someone testified the exterior lights were on. (Id.)

When Borum arrived at the Hamtramck Yard, he exited on the passenger side of the van, which had stopped in a parking space in front of the yellow curb running around the perimeter of the sidewalk. (Id.; Borum Dep. Ex. 6.) He retrieved his bag from the back of the van and walked over to the sidewalk. (Borum Dep., p. 63.) He did not know the number of steps he took during the trip between his exit from the van to the back of the van and then the sidewalk. (Id.) Borum testified he was looking down at the ground as he walked, as required by Defendant's safety rules. (Id., p. 64.)

Borum testified that he saw the presence of ice and absence of salt as he walked:

Q: And as you walked along in the parking lot and as you walked along the sidewalk, did you observe there was ice in the parking lot and on the sidewalk?

A: Yes.

Q: Despite the fact it was six o'clock in the morning on March 2nd, you said you were able to see the presence of ice in the parking lot and on the sidewalk and you were able to see the absence of salt in the parking lot and the sidewalk?

A: Yes.

Q: So you nevertheless walked with caution you say?

A: Yes.

>   Q: You're looking where you're walking?
>
>   A: Yes.
>
>   **
>
>   A: I stepped on the … yellow curb, and that's where I slipped. I slipped off the yellow curb …

(Id., pp. 67-68.)

Borum testified that, after he fell, he rolled over and got up. (Id., p. 70.) He then opened the driver's side rear door of his truck, put his bags in the truck, and walked into the building to report the incident. (Id., p. 71.)

**Testimony Of Defendant's Representatives**

Troy Stobaugh, in charge of snow removal for Defendant's Hamtramck Yard parking lot in March 2006, testified: "At times, we would be called if a spot was discovered that was, you know, had occurred through, you know, snow melting or something to that matter, but we had a regular procedure where we would go through and clear the snow." (Stobaugh Dep., pp. 10-11.) When asked if his employees "ever get out of the trucks and do the sidewalks as well," Stobaugh testified: "Absolutely, if needed. I mean a lot of times they were already down (sic), the sidewalk portions." (Id.) Stobaugh also testified the snow removal is done "periodically, you know, every shift, all shifts; so at all times, really. Somebody always had an eye on it." (Id., p. 12.) Stobaugh explained that snow removal is "pretty much everybody's responsibility around the building." (Id., p. 14.) The custom and practice was for sidewalks and parking lots: "To be salted. We would salt them and plow them." (Id., p. 17.) They did so on a "daily basis." (Id.) They would also occasionally be called in at night when an ice or snow storm hit. (Id., p. 17.)

One of Borum's supervisors, Michael Mowen, testified he was responsible "to make

conditions as safe as possible for the crews." (Mowen Dep., p. 8.) Mowen recalled the weather during his shift (from 6:00 p.m. on March 1 to 6:00 a.m. on March 2, 2009) as "off and on freezing rain …throughout the night." (Id., pp. 8-9.) He recalled the weather was "…pretty much a light mist most of the time." (Id., p. 10.) Mowen testified that he took the following steps regarding the freezing rain:

> A: I applied salt to the sidewalks around the building. We have salt containers at 1, 2, 3 - - 4 entrances to the building. And then also scattered it around the parking lot.
>
> Q: Do you recall what time you did that?
>
> A: Right around 11:00 or 12:00 o'clock. I done it one of the times when the ice started getting worse, and I recall going back out again at 5:00, just between 5:00 and 5:30, before the end of my shift, so that everything would be covered during the change of shifts.

(Id., p. 11.) In his report, Mowen noted that he had "salted walks and entrances all around BOC building and many areas of the parking lot around most of the parked cars." Mowen was deposed about salting around "most" of the cars:

> Q: How come you only did it around most of the parked cars? Why not all the parked cars?
>
> A: Some of the parked cars were labor jobs, that they wouldn't be back for many hours.
>
> Q: Okay. Well, what would be the significance of that, not salting around those cars?
>
> A: With the rain constantly falling, it would be - - it wouldn't help. I was concentrating on the parked cars near the building.

(Id., p. 15.)

Nate Walton relieved Mowen. (Walton Dep., p. 13.) Walton acknowledged that Mowen reported salting the sidewalk and parking lot, and Walton himself confirmed the parking lot was salted when he arrived at the Hamtramck Yard between 6:30 and 7:00 a.m. (Id., pp. 16, 18-19,

35.) He saw salt on the sidewalk and walked the perimeter of the building, which needed no additional salt. (Id., pp. 37, 39.) The exterior lights on the building and in the parking lot were shining on the sidewalk and parking lot. (Walton Aff.)

## ANALYSIS

### Summary Judgment Standard

Summary judgment is proper if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if proof of that fact would establish or refute one of the essential elements of a claim or defense and would affect the application of governing law to the rights and obligations of the parties. Kendall v. Hoover Co., 751 F.2d 171, 174 (6th Cir. 1984). The court must view the evidence and any inferences drawn therefrom in a light most favorable to the nonmovant. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). For a claim to survive summary judgment, the nonmovant must offer more than a mere scintilla of evidence as to the material facts. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). The movant's burden is satisfied where there is an absence of evidence to support the nonmovant's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

### Defendant Is Entitled To Summary Judgment

To recover on a FELA claim, a plaintiff must establish: (1) that the railroad was negligent under FELA; (2) that the railroad's negligence caused the plaintiff's injuries; and (3) that his injuries were reasonably foreseeable to the railroad. Adams v. CSX Transp. Inc., 899 F.2d 536, 539 (6th Cir. 1990) (citation omitted). In this case, Defendant argues that: (1) Plaintiff is unable to establish that Defendant was negligent with regard to Plaintiff's working conditions on March 2, 2006; (2) Plaintiff is unable to establish that Defendant had the required notice of the

existence of any unsafe condition on March 2, 2006; and (3) Plaintiff's conduct on March 2, 2006 was the sole cause of his claimed incident.  Any of these failures is fatal to Plaintiff's case.  I address the negligence requirement first.

The standard of care in a FELA action was thoroughly discussed in <u>Atlantic Coast Line R.R. v. Dixon</u>, 189 F.2d 525, 526-27 (5th Cir. 1951) (citation omitted):

> The employer is not held to an absolute responsibility for the reasonably safe condition of the place, tools and appliances, but only to the duty of exercising reasonable care to that end, the degree of care being commensurate with the danger reasonably to be anticipated.

Under this standard, the existence of transient conditions created by the weather do not, standing alone, create liability under FELA.  <u>Raudenbush v. Baltimore & Ohio R. Co.</u>, 160 F.2d 363, 366-367 (3rd Cir. 1947).  Instead, a plaintiff must show that the railroad was negligent, that the railroad did not furnish a reasonably safe place to work.  <u>Id.</u>  "The phrase 'reasonably safe place to work' is a term of relative application.  It does not mean the absolute elimination of all dangers, but the elimination of those dangers which could be removed by the exercise of reasonable care on the part of the employer."  <u>Id.</u>  "'[T]he proper inquiry is whether the method prescribed by the employer was reasonably safe, not whether the employer could have employed a safer alternative method for performing the task.'"  <u>Johnson v. Grand Trunk Western R. R.</u>, 2008 WL 283703, *4 (E.D. Mich. Jan. 31, 2008) (citation omitted); <u>See also</u> <u>Detroit, T. & I. R. Co. v. Banning</u>, 173 F.2d 752, 755 (6th Cir. 1949) (finding district court erred in submitting to jury the issue whether railroad was negligent because a "temporary dangerous working condition" resulting from weather does not constitute negligence if "reasonable steps are taken or means provided by the carrier to counteract or avoid the danger...").

In this case, the testimony of Borum's supervisors demonstrates Defendant fulfilled its duty of reasonable care by following a protocol of periodic and "as needed" applications of salt

in the parking lot and on the sidewalk to prevent icy conditions.  Borum's supervisor Mowen applied salt in the parking lot and sidewalk of the Hamtramck Yard on two separate occasions the morning of Borum's injury.  The reasonable nature of the precautions were confirmed by supervisor Walton.  The area in question was well-lit and Defendant had placed a salt barrel nearby to be used by any employee, such as Borum, who noted any unsalted area.  There is no basis for any claim that Defendant could be found negligent because a "little" patch of ice had developed at some unknown point on a curved portion of the curb where Borum allegedly chose to step.  Borum is unable to meet the first requirement of proving a FELA claim - to show that Defendant was negligent with respect to his work conditions on March 2, 2006.  As such, I GRANT Defendant's Motion.

A final comment as to the concept that because a case "is close" the legal requirements should be more flexible, i.e., a judge should allow a jury determination.  This is exactly what should not happen.  It tempts a judge to put aside his responsibility and let the jury decide whether there is any evidence in support.  A party needs some evidence of negligence to get to the jury.  Here, as in Johnson, "Plaintiff's complaint and his deposition testimony, fairly understood, do not offer any proof...[that Defendant's action] in any way constitutes negligent conduct."  2008 WL 283703, *4.  As such, Borum cannot take his case to the jury.

## CONCLUSION

As Borum has not provided more than a mere scintilla of evidence that Defendant was negligent, Borum's FELA case should be dismissed.  Because Borum cannot meet the negligence requirement, I need not examine the remaining requirements of a FELA claim.  Therefore, I GRANT Defendant's Motion for Summary Judgment.

**IT IS SO ORDERED.**

Date:  September 29, 2009              s/ John Feikens
                                                          John Feikens
                                                          United States District Judge

---

Proof of Service

I hereby certify that the foregoing order was served on the attorneys/parties of record on September 29, 2009, by U.S. first class mail or electronic means.

                                     s/Carol Cohron
                                     Case Manager